## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHARLES REX ACKER** | § | **FILED** |
| | § | April 25, 2006 |
| **Plaintiff,** | § | |
| | § | **CLERK, U.S. DISTRICT COURT** |
| **vs.** | § | |
| | § | **Civil Action No. 3:04-cv-1327-R** |
| **DEBOER, INC. a/k/a** | § | |
| **DEBOER TRUCK LINES,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is defendant deBoer's Motion for Summary Judgment (Dkt. No. 22).

After carefully considering the motion, response, reply, the summary judgment evidence, the parties'

supplemental briefing,[1] and the applicable law, the Court **DENIES** defendant's motion.

### I. BACKGROUND

Plaintiff Charles Rex Acker, has sued his former employer, defendant deBoer, Inc. a/k/a

deBoer Truck Lines ("deBoer"), for violating the Age Discrimination in Employment Act (the

"ADEA"), 29 U.S.C. §§621 *et seq.* (West 2005) and its state-law counterpart, the Texas Commission

on Human Rights Act (the "TCHRA"), Tex. Labor Code Ann. §§21.001 *et seq.* (Vernon 1996 &

Supp. 2005).[2]

On March 1, 2001, deBoer hired Acker as Southwest Regional Sales Manager for the

---

[1]On November 29, 2005, the Court requested supplemental briefing from the parties in light of the Fifth Circuit's recent decisions in *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004) and *Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005).

[2]Acker's complaint included a claim for intentional infliction of emotional distress, but Acker subsequently withdrew the claim in his response to Defendant's motion for summary judgment. (*See* Pl.'s Resp. Br. at 2 n.1). Accordingly, the claim is deemed withdrawn.

company.  (Mot. App. 11, 116; O'Neill Decl. ¶¶2-4).  Acker was 63 years old at the time. (Mot. App. 11).  While working for deBoer, Acker's duties and responsibilities included developing customer data for the company's sales and marketing efforts in the Texas, Louisiana, Arkansas, and Oklahoma; assisting co-workers with sales; providing customer assistance; soliciting prospective customers and new business opportunities; and preparing various administrative reports and itineraries.  (Mot. App. 118).

Michael O'Neill, Vice President of Sales and Marketing at deBoer, supervised Acker until he (O'Neill) left the company in late August 2002.  (O'Neill Decl. ¶4).  On or about July 29, 2002, Acker introduced O'Neill to his friend Jack McFadden, President and Owner of Pegasus Transportation Group ("Pegasus"), one of deBoer's competitors in the trucking industry.  (Mot.App. 6A, 77, 91).  At the time of the introduction, Acker knew that McFadden was looking to hire a new national sales manager.  (Mot.App. 77).  One month later, O'Neill left deBoer to begin working for Pegasus.  (Mot.App. 82-83, 91).[3]

In November 2002 – months after O'Neill began working for Pegasus –  deBoer discovered various e-mails between O'Neill and McFadden on a laptop computer that O'Neill had used before leaving the company.  The messages revealed that O'Neill had intended to leave deBoer for Pegasus as early as August 2002 and had even prepared for his departure by sending McFadden a business plan of potential sales opportunities for Pegasus, a document that contained a list of deBoer's customers and information about the services that deBoer provided to them.  (Mot. App. 91-98,

---

[3]Acker states that he introduced O'Neill to McFadden for two reasons.  First, he claims that he introduced O'Neill to McFadden because he believed that McFadden could provide O'Neill with "valuable insight into the trucking industry."  (Acker Decl. at ¶¶5, 8).  Second, Acker claims that he made the introduction because "deBoer had expressed interest in entering the intermodal [freight] transportation business," and he knew that McFadden had "substantial experience" with intermodal shipping and could be a potential source of contacts for O'Neill. (Acker Decl. ¶8).

100).

The earliest e-mail between O'Neill and McFadden that has been submitted as evidence to the Court is dated August 5, 2002.  In his e-mail, O'Neill attempts to negotiate a dinner meeting with McFadden on an upcoming business trip.  O'Neill also mentions that he is scheduled to attend a dinner event that McFadden will also be attending.  Because his supervisor, Doug Vogel, will also be attending the same event, O'Neill asks McFadden to be cautious about what he says at the function.  Specifically, he tells him the following:

> ... Doug Vogel and wife Cindy (deBoer) Vogel will be at the [Tuesday] function. We need to be careful as to what we say in their presence.  I want the resignation notice to come from me, directly to Ron deBoer, as that is who I report to and I wouldn't want him to hear it from someone else first.

(Mot. App. 100).  As an additional reason to be cautious, O'Neill mentions that disclosing their intentions might subject Acker to reprisal at deBoer.  He writes, "I am also concerned about protecting Rex's role in all this.  He wants to make it at least until the end of the year."  (*Id.*)

Three nights later, on August 8, O'Neill sent McFadden another e-mail containing a four-page business proposal.  The e-mail reads as follows: "Jack, [¶] First installment.  Please confirm receipt so that I can delete from my laptop. [¶] Thanks, MJO."  (Mot. App. 101).  The document attached to the e-mail describes O'Neill's anticipated resignation from deBoer and his plans for relocating to Texas.  More significantly, the document lists, by region, several of deBoer's customers as potential opportunities for Pegasus and, in numerous instances, describes deBoer's routes and shipping loads for those companies.  (Mot.App. 85-86, 89-98).

Other portions of the proposal reveal that O'Neill had already attempted to solicit customers away from deBoer and refer them to Pegasus while he was still employed by deBoer.  For example, when mentioning one company as a potential source of new business, O'Neill tells McFadden that

3

he has already notified a trusted business contact at the company about "our plans" – i.e., his intent

to leave deBoer for Pegasus – because he "wants] her to bring Pegasus on board asap." (Mot. App.

91). He further reports that his contact had already "agreed to pull [Pegasus's] quote out of the stack

and input the info into the computer," thereby hastening the company's transition from deBoer to

Pegasus for its shipping. (*Id*.).

The following afternoon, on August 9, McFadden agrees to meet with O'Neill for dinner as

O'Neill had proposed in his earlier message. (Mot. App. 100). In that e-mail, McFadden assures

O'Neill that he understands his need for confidentiality and tells him that he has not told anyone at

Pegasus about his planned departure from deBoer. (*Id*.)

McFadden concludes his message by asking O'Neill when he was planning to leave deBoer

and start at Pegasus, even though O'Neill had already informed him of those dates in his business

proposal. Minutes later, McFadden realizes his error and sends O'Neill the following message, in

which he appears to encourage O'Neill to solicit deBoer's customers before officially starting with

Pegasus:

> You answered my question from earlier email [sic], so just ignore. Looks good to
> me. I think your idea of calling in the Wisc., Ill. area is good before moving to
> Texas.

(Mot. App. 100-01).

After learning of these e-mails, deBoer reviewed Acker's business phone records and

discovered that he had been in constant contact with Pegasus since he began working for deBoer.

(Mot.App. 13-61, 65-69, 112-13, 6B-6P). Defendant claims that Acker's phone records are further

evidence of his disloyalty since the number of phone calls that he made to Pegasus significantly

increased after O'Neill left deBoer. (*See* Def.'s Reply at 3, citing Reply App. 1-16, Mot.App. 13-

61).  In fact, Defendant points out that 3 of the 4 phone calls that Acker made to Pegasus in August 2002 occurred on the same day that O'Neill resigned.  (*Id.*)

In early December 2002, the president of the company, Ron deBoer, met with Acker and confronted him with the e-mails and the phone logs that the company had discovered.  (Mot. App. 65-69).  Acker asserts that he told Ron deBoer that he did not know about any e-mails exchanged between O'Neill and McFadden; that he did not divulge any sensitive or confidential information about deBoer to anyone; and that he was not involved in any of O'Neill and McFadden's activities or any dispute between them and deBoer. (Mot. App. 67; Acker Decl. ¶12).  Additionally, Acker claims to have also explained to Ron deBoer that the phone calls that he made to Pegasus (including phone calls made after O'Neill had left deBoer) were friendly social phone calls to McFadden, his long-time friend, and O'Neill.  (Mot. App. 67).

Ron deBoer believed that Acker's explanation for these items was unsatisfactory and immediately terminated from his position. (Mot.App. 67-69; Supp.Mot.App. 10-11).  Months later, Acker filed an age discrimination complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights.  On March 17, 2004, the EEOC issued Acker a right to sue notice. Acker timely filed this lawsuit on June 16, 2004.

## II. Analysis

Defendant has moved for summary judgment on Acker's ADEA claim and his TCHRA claim.  Defendant contends that the undisputed summary judgment evidence submitted to the Court demonstrates that deBoer had a legitimate, non-discriminatory reason for discharging Acker, which hat Acker is unable to counter by showing that the deBoer's justification for terminating him is pretext or that his age was a motivating factor for his discharge.  (Def.'s Mot. Br. at 2).

5

A.      **Standard of Review**

Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure is appropriate when there is no genuine issue as to any material fact in the case and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986); *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Lynch Properties, Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998).  Where the non-movant bears the burden of proof on a claim upon which summary judgment is sought, the movant may also discharge its initial burden by showing that there is an absence of evidence to support the nonmoving party's case.  *See Celotex*, 477 U.S. at 325.  Once the movant has met its initial burden, the non-movant must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431-32 (5th Cir. 1998).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant.  *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988); *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985).  The court cannot make a credibility determination in

light of conflicting evidence or competing inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

### B.    Plaintiff's ADEA Claim

Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a). Claims for disparate treatment under ADEA are analyzed in the same manner as claims disparate treatment under Title VII. *Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

To withstand an employer's motion for summary judgment, the plaintiff-employee must present sufficient evidence – whether by direct or circumstantial evidence (or both) – to create a genuine issue of fact that he or she was discriminated against by an employer. *See Jackson v. TXU Corp.*, 2006 WL 509418 *2 (N.D.Tex. 2006). The employee generally has two options for making this threshold showing: he or she may either (1) present direct evidence that raises a genuine issue of material fact as to whether the plaintiff's protected characteristic was a motivating factor for the adverse employment decision or (2) establish a permissible inference of discrimination by relying on the burden-shifting framework erected by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny. *See Machinchick*, 398 F.3d at 350 (ADEA); *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001) (Title VII retaliation); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

7

Therefore, the analysis that a court should "employ"[4] in a Title VII or ADEA case depends on whether the plaintiff offers direct evidence of discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *see also*, *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citation omitted); *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003). Where a plaintiff provides direct evidence of discrimination, then "the *McDonnell Douglas* test is inapplicable." *Thurston*, 469 U.S. at 121; *see also, Jones*, 427 F.3d at 992; *Rachid*, 376 F.3d at 309. If, however, the employee can only muster circumstantial evidence of discrimination, then he or she must rely on the *McDonnell-Douglas* burden-shifting framework to create a presumption of discrimination in order to withstand an employer's motion for summary judgment. *See Rachid*, 376 F.3d at 312.

### 1.      Direct Evidence

The Court will first determine if Acker has shown direct evidence of age discrimination. Direct evidence is evidence which, if believed, proves the fact in question without inference or presumption. *Jones*, 427 F.3d at 992; *Fabela*, 329 F.3d at 415. In the employment discrimination context, this includes "any statement or document which shows on its face that an improper criterion served as a basis– not necessarily the sole basis, but a basis– for [an] adverse employment action." *Fabela*, 329 F.3d at 415 (citing *Fierros*, 274 F.3d at 192); *see also*, *Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146 *3 (N.D.Tex. 2006). However, "[i]f an inference is required for the evidence to be probative as to an employer's discriminatory animus in terminating the former employee, the evidence is circumstantial, not direct." *Wilber v. Tharaldson Employee Management Co.*, 2005 WL 3018262 *6 (N.D.Tex. 2005) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897-98 (5th

---

[4]No pun intended.

Cir. 2002), *cert. denied*, 539 U.S. 926 (2003)).

"If an employee presents credible direct evidence that discriminatory animus at least in part motivated, or was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus." *Jones*, 427 F.3d at 992 (citing *Brown v. East Mississippi Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

The parties dispute whether Acker has presented direct evidence of discrimination.  Acker claims that O'Neill's declaration provides direct evidence that he was terminated because of his age. In his declaration, O'Neill recounts several instances in which he heard negative remarks about Acker's age from his (Acker's) supervisors and other senior management personnel.  O'Neill claims that these comments began "as soon as" he announced to deBoer's management that he had hired Acker.  O'Neill mentions the following age-related remarks in particular: (1) Ron deBoer asked him when Acker was going to retire; (2) Ron deBoer asked him whether he could have found a younger employee to fill Acker's position; (3) Ron deBoer told him that Acker needed to be "put out to pasture"; (4) Ron deBoer told him to find a younger employee who could run "faster and leaner" than Acker; (5) Doug Vogel, deBoer's Vice President of Operations (and Ron deBoer's son-in-law) expressed disapproval with Acker's performance and told O'Neill that Acker should get a job as a night watchman; and (6) senior management in deBoer's home office in Wisconsin openly discussed Acker's retirement and possible replacement by a younger employee at a company meeting.  (Pl.'s Resp. Br. at 9-10, citing Resp.Supp.7; O'Neill Decl. ¶11).  Acker contends that when viewed in the light most favorable to him, these comments are direct evidence of discrimination that create a genuine issue of material fact as to whether his age was a motivating factor in his termination.

9

In response, Defendant contends that these comments never occurred.  As proof, it has submitted the declarations of Ron deBoer and Doug Vogel, both of whom unequivocally deny O'Neill's allegations. (Reply App. 27-30; R.deBoer Decl. ¶4, Vogel Decl. ¶4).  More significantly, deBoer argues that even if these remarks occurred as alleged, they are not direct evidence of discrimination since they amount to nothing more than "stray remarks," which will not suffice as direct evidence of discrimination under Fifth Circuit case law.  (Def.'s Reply Br. at 5-6; Def.'s Supp. Mot. Br. at 3 & n.2).

In order for a discriminatory comment or remark to constitute direct evidence of employment discrimination, the Fifth Circuit has held that the comment must meet the four-factor test set forth in *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996).  *See Laxton v. Gap, Inc.*, 333 F.3d 572, 583 n.4 (5th Cir. 2003); *Auguster v. Vermilion Parish School Bd.*, 249 F.3d 400, 405-406 (5th Cir. 2001); *Krystek v. University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999).  Under the *CSC Logic* test, a workplace remark constitutes direct evidence of discrimination if it is: (a) related to the protected class of persons of which the plaintiff is a member, (b) proximate in time to the employment decision at issue, (c) made by an individual with authority over the employment decision at issue, and (d) related to the employment decision at issue.  *Auguster*, 249 F.3d at 405 (quoting *CSC Logic*, 82 F.3d at 655).[5]

Here, Defendant contends that the remarks mentioned in O'Neill's declaration were stray remarks since they were "remote in time" to Acker's termination and did not "direct[ly] and unambiguous[ly]" refer to his termination.  (Def.'s Reply Br. at 5-6; Def.'s Supp. Mot. Br. at 3 &

---

[5]As explained, *infra*, the four-factor *CSC Logic* test does not apply where the workplace remark is presented as circumstantial evidence of discrimination under the *McDonnell-Douglas* framework.  *See Laxton*, 333 F.3d at 583 n.4; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000).

n.2). With respect to the first issue, the Court notes that O'Neill's declaration fails to specify when these age-related comments occurred. The only indication is O'Neill's statement that he began to receive negative comments related to Acker's age "[a]s soon as [he] announced that [he] had hired [him]." (O'Neill Decl. ¶11-12). Despite this evidentiary shortcoming in his declaration, the Court, in the interest of justice, has reviewed the entire record and finds as follows:

O'Neill's statement that "senior management" in deBoer's home office openly discussed Acker's retirement and possible replacement by a younger employee [comment (6), above] is not direct evidence that Acker's age served as a basis for his termination. *See* O'Neill Decl. ¶11. O'Neill neither specifies which members of senior management made these comments or when they occurred. In the absence of evidence demonstrating that the comment was proximate in time to Acker's termination or that the unnamed members of management had the authority or influence to terminate him, this testimony does not constitute direct evidence that Acker's age was a motivating factor for his termination.[6]

O'Neill's deposition testimony provides additional information concerning the timing of the other comments mentioned in his declaration. According to O'Neill, Ron deBoer's statements that Acker needed to be "put out to pasture" and that O'Neill should have hired a younger employee because the position required someone who could "run faster and leaner" than Acker could – [comments (2), (3), and (4)] – occurred within the first 60-90 days of Acker's employment, which began on March 1, 2001. (Supp.Resp.App. 5-7). Those comments are certainly not "proximate in time" to Acker's termination, which occurred in December 2002, more than a year after he was hired. By implication, those comments do not qualify as direct evidence of discrimination. *See*

---

[6]Although the Court must view the evidence in the light most favorable to Acker, in doing so, it cannot presume facts that would satisfy the *CSC Logic* test.

*Akop*, 2006 WL 119146 *3 (holding that an age-related remark made eight months prior to plaintiff's termination was not proximate in time to qualify as direct evidence of discrimination).

The same is true for Ron deBoer's inquiry about Acker's retirement plans and Doug Vogel's statement that Acker should have received a job as a night watchman [comments (1) and (5)]. According to O'Neill, those comments occurred "sometime within the first twelve months" of Acker's employment. (Supp.Resp.App. 7-9). The Court notes that Acker was employed with deBoer from March 1, 2001 to December 5, 2002. Viewing O'Neill's testimony in the light most favorable to Acker, the very latest that these comments could have occurred would be March 1, 2002, twelve months after Acker was initially hired and *nine months* before he was terminated. Even if the Court were to assume that these remarks evinced age-based animus and were related to Acker's discharge, they are not direct evidence of discrimination because they are not proximate in time to Acker's termination on December 5, 2002.

Even if the Court were to ignore the problem of temporal remoteness, the comments that O'Neill describes in his declaration do not suffice as direct evidence of discrimination since, on their face, they are not sufficiently related to deBoer's ultimate decision to fire Acker. Moreover, as deBoer correctly notes, O'Neill cannot attest to the reasons for Acker's discharge since he was terminated in August 2002, three months before Acker was fired. (*See* Def.'s Reply Br. at 7). O'Neill's own testimony demonstrates that he does know why Acker was terminated and that he has never heard from anyone at deBoer that Acker was fired because of his age. (Supp.Mot.App. 72). In fact, when O'Neill was asked whether he suspected if Acker was terminated for introducing him to McFadden, he responded, "I have no idea. I mean, I was long gone when they terminated Rex, so I don't know." (Supp.Mot.App. 65). Since the Court must *infer* that the age-related comments

that he heard were related to the ultimate decision to fire Acker in December 2002, the comments that O'Neill mentions in his declaration, as a matter of definition, are not direct evidence of discrimination. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003); *Sandstad*, 309 F.3d at 897-98.

### 2.      Circumstantial Evidence

In the absence of direct evidence of discriminatory intent, courts have typically relied on the *McDonnell-Douglas* burden-shifting framework to determine whether a genuine issue of material fact exists on whether employment discrimination occurred. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141-42 (2000). In this regard, the *McDonnell Douglas* framework is intended "[to] compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (plurality opinion) (O'Connor, J., concurring in the judgment).

In light of the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Fifth Circuit has adopted a "Modified" *McDonnell Douglas* framework for analyzing employment discrimination claims that rely exclusively on circumstantial evidence. *See Machinchick*, 398 F.3d at 350; *Rachid*, 376 F.3d at 312. Under the "Modified *McDonnell Douglas*" approach, a plaintiff must first demonstrate a prima facie case of discrimination by a preponderance of the evidence. *Rachid*, 376 F.3d at 312. To show a prima facie case of age discrimination under ADEA, a discharged employee must show that he or she: (1) was discharged; (2) was qualified for or competently performing in the position held; (3) was within the protected class at the time of the discharge (e.g. over 40 years of age); and (4) was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his or her

age. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005); *Rachid*, 376 F.3d at 309 (citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003)).

If the plaintiff meets this initial burden, an inference of intentional discrimination arises, and the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *See Reeves*, 530 U.S. at 142. At this stage, the employer's burden "is one of production, not persuasion: it 'can involve no credibility assessment.'" *Id.* (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)); *Baker*, 430 F.3d at 753-54.

Once the defendant produces evidence of a legitimate, nondiscriminatory reason for the adverse action, "the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination." *Machinchick*, 398 F.3d at 350. Consequently, the burden shifts back to the plaintiff to show that either (1) the defendant's reason is not true, but is instead designed to serve as pretext for unlawful discrimination; *or* (2) that the defendant's reason, even if true, is only one of the reasons for the adverse action and that age is nevertheless a 'motivating factor' for the adverse action. *Machinchick*, 398 F.3d at 351-52; *Rachid*, 376 F.3d at 312 (citation omitted).

### a.    Acker's Prima Facie Case under ADEA

Under the ADEA, a plaintiff may establish a prima facie case of age discrimination by producing evidence that he was "discharged because of his age," without regard to how much younger his or her replacement may have been. *Rachid*, 376 F.3d at 309 (quoting *Palasota*, 342 F.3d at 576). Neither party has briefed whether Acker has shown a prima facie case of discrimination. However, the Court notes that, "[t]o establish a prima facie case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th

Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir.1985)).

Viewing the evidence in the light most favorable to Acker, the Court finds that Acker has shown a prima facie case under ADEA.  He can show that he was 65 years old when he was terminated; that he was qualified and competently performing in his position prior to his termination; and that he has produced some circumstantial evidence of discriminatory intent – i.e. O'Neill's testimony that various members of management made negative comments about Acker's age and suggested that they wished to replace him with someone younger.  (*See* O'Neill Decl. ¶11).

### b.      deBoer's Legitimate Nondiscriminatory Reason for Terminating Acker

Because Acker has made a prima facie showing, the burden now shifts to deBoer to produce evidence that it had a legitimate, nondiscriminatory reason for terminating Acker.  In its briefing to the Court, deBoer claims that Acker's age did not play any role in its decision to fire him.  Rather, deBoer contends that it sole reason for terminating Acker was for being disloyal to the company. (Def.'s Mot. Br. at 5-7).

As evidence for its claim that it terminated Acker for disloyalty, deBoer points to the e-mails it discovered between O'Neill and McFadden, one of which specifically referred to Acker and implicated him in their activities; the company phone logs that show that Acker frequently contacted Pegasus while he was employed with deBoer; and Ron deBoer's testimony that Acker provided an unsatisfactory explanation of those items when he was confronted with them on the day he was terminated.  It is well-established that an employee's disloyalty to his or her employer is a legitimate nondiscriminatory reason for termination.  *See Bauer v. Abermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999); *Lassetter v. Strategic Materials, Inc.*, 192 F.Supp.2d 698, 702 (N.D.Tex. 2002).

15

Accordingly, the Court finds that deBoer has met its burden of production.

> **c.      Acker's Evidence of Discriminatory Intent (Pretext or Mixed Motive)**

The burden now shifts to Acker to produce evidence of discriminatory intent. *See Machinchick*, 398 F.3d at 350.  To carry this burden, Acker must offer sufficient evidence to create a genuine issue of material fact that the proffered nondiscriminatory reason is false or unworthy of credence (i.e., "pretext" for discrimination) or, even if true, that his age was nevertheless a motivating factor for his termination. *Id.* at 351-52; *Rachid*, 376 F.3d at 312; *Laxton*, 333 F.3d at 578.

> **(1)      Pretext**

With respect to the first option, Acker may withstand deBoer's motion for summary judgment if he is able to show, by substantial evidence, that deBoer's rationale for firing him – i.e., for being a disloyal employee – is pretext for age discrimination. *See Reeves*, 530 U.S. at 143; *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).  To prove pretext, "a plaintiff need only bring evidence that enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action." *Laxton*, 333 F.3d at 580 n.2 (citing *Reeves*, 530 U.S. at 147); *Bauer*, 169 F.3d at 967 ("Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient.") (quotation and citation omitted).  Generally, an employee may attempt to show pretext by presenting evidence that the employer's reason for the adverse employment action was (1) factually baseless; (2) not the actual motivation for the discharge; or (3) insufficient to motivate the discharge. *See, e.g., Koski v. Standex Int'l Corp.*, 307 F.3d 672, 677 (7th Cir. 2002) (citation omitted); *Raad v. Fairbanks North Star Borough School Dist.*, 323 F3d 1185, 1194 (9th

Cir. 2003).

At this stage, a plaintiff is *not* required to introduce additional, independent evidence of discrimination. *See Reeves*, 530 U.S. at 148. That is because the strength of the circumstantial evidence supporting the plaintiff's prima facie case, in combination with evidence showing the defendant's proffered reason is false or "unworthy of credence," may be sufficient to create an inference of discrimination. *Id.* Since *Reeves*, the Fifth Circuit has recognized that "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is *likely* to support an inference of discrimination even without further evidence of the defendant's true motive." *Laxton*, 333 F.3d at 578 (citing *Sanstad*, 309 F.3d at 899 and *Russell*, 235 F.3d at 223) (emphasis added). However, merely proving that a defendant's proffered reason is unpersuasive or contrived is insufficient to compel an inference that intentional discrimination occurred. *See id.* at 146-47 (citing *St. Mary's Honor Center*, 509 U.S. at 524).

In determining whether a plaintiff has provided sufficient evidence of pretext to proceed to trial, "a court should consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Reeves*, 530 U.S. at 148-49). In rare circumstances, a defendant may be entitled to summary judgment "if the record conclusively reveal[s] some other, nondiscriminatory reason for the [adverse] decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination has occurred." *Reeves*, 120 U.S. at 148.

Acker asserts that deBoer's reason for terminating him is pretext for age discrimination

because he was, in fact, a loyal employee who was neither involved in any conspiracy to steal

deBoer's proprietary information nor responsible for the disclosure of such information.  (Pl.'s Resp.

Br. at 7-9; Pl.'s Supp. Resp. Br. at 8-11).[7]  As proof, he asserts that, at the time of his discussion with

Ron deBoer, he was unaware of the e-mails exchanged between O'Neill and McFadden and was

unaware of any illicit activity concerning deBoer.  (Supp.Resp.App. at 8-9).   Moreover, Acker

contends that the company had no reason to terminate him for his phone calls to Pegasus since the

phone calls under scrutiny were friendly calls to O'Neill, his former supervisor, and McFadden, a

long-time friend who, by chance, happened to be the president of Pegasus.[8]  (*Id*.)  Because Acker

offered these very explanations to Ron deBoer on the day of his termination, he suggests that the

company deliberately chose to view the e-mail and telephone calls in the worst possible light and

hastily concluded that he had conspired with O'Neill and McFadden to steal deBoer's confidential

---

[7]Acker has also advanced a second theory to show pretext: He argues that the discriminatory remarks allegedly made by deBoer's management shows that his age was the "true reason" for his discharge.  As mentioned previously, to prove pretext, a plaintiff may cast doubt on an employer's rationale for his or her termination by showing that the purported reason was not the actual reason for the discharge.  However, where, as here, the "other reason" to be proved is *employment discrimination itself*, then a plaintiff need only show that his or her protected characteristic was a motivating factor for the termination. Therefore, by asking the Court to find pretext because his age was the "true reason" for his discharge, Acker is seeking to prove more than is necessary after *Desert Costa* and *Rachid*.  For that reason, the Court will consider this argument in conjunction with its analysis of whether he has shown that a genuine issue of material fact on whether his age was a "motivating factor" for his termination.  *See infra*, Part II.B.2.c.(2).  The court will, however, determine if this evidence, in conjunction with other evidence submitted by Acker, is ultimately sufficient to create a genuine issue of material fact of whether deBoer's nondiscriminatory reason for terminating him is false of unworthy of credence.

[8]As further proof of his nonpartcipation in any scheme between O'Neill and McFadden, Acker claims in his declaration that his communications with Pegasus remained constant throughout his time at deBoer, a claim that deBoer vigorously disputes. To rebut this claim, deBoer has appended the relevant phone logs to its motion, which reveal that the number of calls that he made to Pegasus significantly increased after O'Neill left deBoer.  This, deBoer argues, suggests that the Acker's phone calls increased in collusion with O'Neill and McFadden's alleged scheme.  Because the Court must view disputed facts in the light most favorable to Acker, the nonmovant, the Court will assume that the number of phone calls that he made to Pegasus remained constant throughout his tenure at deBoer.

customer information.[9] (Supp.Resp.App. at 9-10).     As further evidence that deBoer's justification is pretext for discrimination, Plaintiff contends that Pegasus did not compete with deBoer for the same business since deBoer did not offer intermodal shipping services, Pegasus's principal area of business.  (Supp.Resp.App. 27-30; McFadden Depo.).  Therefore, he argues, any competition that deBoer perceived was illusory and tends to prove that deBoer's rationale for firing him was pretext. (Supp.Resp.App. at 9-10).

In the absence of other evidence, the Court finds that Acker's has failed to meet his burden of showing that deBoer's justification for firing him was false or unworthy of credence.  Where an adverse employment decision is based on an employer's subjective criteria, the relevant inquiry in determining whether the employer's reason for the adverse action is pretext for unlawful discrimination is not whether the defendant's reason was "true," but whether the defendant "reasonably believed" the plaintiff was culpable of the conduct justifying the discharge.  *See Bauer*, 169 F.3d at 967.  The Fifth Circuit has recognized an employer may take "self-protective measures" against employees that it believes to be disloyal "so long as the belief is reasonable, not arbitrary, and not a likely pretext for unlawful discrimination."  *Id.*

At his deposition, Ron deBoer's testified that he terminated Acker because he failed to provide a satisfactory explanation for the e-mails that were discovered on O'Neill's computer and the frequent phone calls that he made to Pegasus while still employed with deBoer.  Consequently, Acker must rebut deBoer's proffered justification that it terminated him because the company *believed* – from the e-mails discovered on O'Neill's computer, Acker's phone logs, and his

---

[9] Acker does not address whether he explained to Ron deBoer the portion of O'Neill's e-mail which stated that Acker had intended to leave the company by the end of the year.  O'Neill's explanation for that comment was that he was aware of management's bias against Acker because of his age and, therefore, wanted to ensure that he was not improperly terminated on pretext.

unsatisfactory explanation of those items – that he was disloyal.  *See Lassetter*, 192 F.Supp.2d at

702.  In other words, "[t]he question is not whether an employer made an erroneous decision; it is

whether the decision was made with discriminatory motive." *Id.* (quoting *Mayberry v. Vought*

*Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)); *see also*, *Koski*, 307 F.3d at 677-78; *Scroggins*

*v. University of Minnesota*, 221 F.3d 1042 (8th Cir. 2000).

Despite viewing the evidence in the light most favorable to Acker, the Court finds that he

has not presented sufficient evidence to create a genuine issue of material fact of whether it was

unreasonable for deBoer to conclude – based on the evidence discovered on O'Neill's computer, the

evidence contained in company phone logs, and Acker's unsatisfactory explanation of those items

– that Acker had been disloyal to the company.  Ron deBoer's testimony supports deBoer's claim

that, not withstanding Acker's attempt to explain the materials that were found, deBoer terminated

him because the company believed that he had conspired with O'Neill and McFadden to steal

deBoer's customer lists and proprietary sales information for Pegasus's benefit.

Although Acker attempts to explain away the incriminating evidence itself, he has not

offered any competent evidence suggesting that, at the time of his termination, it was unreasonable

for deBoer to have believed that he had been disloyal to the company.[10]  Additionally, the Court is

not convinced by Acker's claim that he has proven pretext by showing that Pegasus was not a direct

competitor of deBoer.  As the Fifth Circuit recognized in *Bauer*, an employer's belief that it was an

---

[10]For example, Acker claims that deBoer misinterpreted the reference to him that was made in the e-mails that were found on O'Neill's computer.  The crux of Acker's argument on this point is that the portion of those e-mails that refers to him – i.e., the statement, "Rex's role in all this" – is an ambiguous statement that the Court should interpret as referring to his role in introducing O'Neill to McFadden, the person that eventually wooed O'Neill away from deBoer.  However, Acker does not produce evidence showing why it would have been unreasonable for deBoer to have concluded otherwise.  deBoer could just as easily have interpreted the statement as demonstrating Acker's disloyalty, especially when viewed in conjunction with the other evidence it had obtained regarding his contacts with Pegasus.

"actual or potential competitor" with another company is sufficient to form a "reasonable" belief of disloyalty where an employee is engaged in questionable, unexplained activities with that other company.  *See Bauer*, 169 F.3d at 967 (holding that "[defendant]'s  belief that [other companies] were actual or potential competitors does not have to be proven to be correct in order for [plaintiff]'s involvement... to be a legitimate, non-discriminatory reason for self-protective measures [like termination]...").

For these reasons, the Court finds that Acker has failed to meet his burden of producing substantial evidence that would impugn deBoer's decision to terminate him for suspected disloyalty. On the the evidentiary record before it, the Court cannot conclude that deBoer unreasonably believed that Acker was a disloyal employee.  Even considering Acker's evidence of pretext in conjunction with the previously-mentioned discriminatory statements that were allegedly made by upper management (see *supra*), Acker fails to raise a genuine issue of materials fact that would demonstrate that deBoer's reason for terminating him is false or unworthy of credence.

### (2)    Mixed Motives

Because Acker has failed to produce evidence from which a reasonable jury could conclude that deBoer's stated reason for discharging him is false or unworthy of credence, Acker may, in the alternative, raise a genuine issue of material fact for trial by presenting evidence that deBoer's reason for terminating him, even if true, is only one reason for his termination and that his age was another "motivating factor."  *See Machinchick*, 398 F.3d at 352 (citing *Desert Palace*, 539 U.S. at 101)West, 330 F.3d at 385 (In proceeding under a mixed motives theory, a plaintiff "is not required to establish that his age was the sole reason he was discharged.").  At the very least, a plaintiff seeking to present a mixed-motives claim must show that an improper motive was one of several

motives for an adverse employment action. *See Desert Palace*, 539 U.S. at 98. In doing so, "[t]he plaintiff must prove that age actually played a role in and had a determinative influence on the employer's decision-making process." *West*, 330 F.3d at 385 (quotations and citations omitted).

If a plaintiff is able to show that age was a motivating factor in the employment decision, "it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus." *Rachid*, 376 F.3d at 312 (quoting *Mooney v. Aramco Serv. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)). If the employer fails to carry this burden, then his motion for summary judgment must be denied. *Rachid*, 376 F.3d at 312.

Plaintiff contends that the various comments about his age made by members of deBoer's upper management (including his supervisor, Doug Vogel, and the company president, Ron deBoer) are sufficient circumstantial evidence to create a genuine issue of material fact whether his age was a "motivating factor" in his termination. In response, deBoer contends – without citing any authority – that the Court should disregard O'Neill's declaration because he is not a disinterested witness in this litigation, and, as such, he cannot provide competent summary judgment testimony. (*See* Def.'s Reply Br. at 5).[11] In the alternative, deBoer once again argues that the Court should disregard these statements as mere "stray remarks" since they are not proximate in time to Acker's termination and did not directly and unequivocally refer to it. (*Id.* at 6.)

"[A] plaintiff can survive summary judgment by producing evidence that creates a jury issue as to [an] employer's discriminatory animus" in making the relevant employment decision. *Sandstad*, 309 F.3d at 897. Plaintiff claims that the age-related remarks made by Ron deBoer, Doug

---

[11] In support of this argument, deBoer emphasizes that O'Neill is named as a defendant in a lawsuit between deBoer and Pegasus in state court. In that lawsuit, O'Neill is accused of breaching his fiduciary duties to the company and stealing confidential trade secret information. (Def.'s Reply Br. at 5.) However, the Court cannot weigh credibility on summary judgment.

Vogel, and other members of deBoer's senior management reveal age-based animus that is sufficient to create a genuine material issue of fact on whether his age was a motivating factor for his termination.  In section II.B.1, *supra*, the Court found that each these comments, on their face, were not sufficient direct evidence that Acker's age was a motivating factor for his termination.  Under that analysis, the Court found that each of the comments that O'Neill mentions in his declaration did not meet the strict four-part test in *CSC Logic* since they were not proximate in time to the termination or did not refer to the actual decision to terminate Acker.

At this stage, however, a plaintiff does not have to meet the strict *CSC Logic* test in order to use discriminatory remarks as circumstantial evidence that his or her protected characteristic was a motivating factor for an adverse employment action. The Fifth Circuit has recognized the inherent value of workplace remarks as circumstantial evidence of discriminatory intent, even though such remarks may be "stray remarks" that would not ordinarily suffice as direct evidence of employment discrimination.  *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) (holding that workplace remarks sufficed as circumstantial evidence from which an inference of discriminatory intent could be drawn even though comments were found to be 'stray remarks' under the *CSC Logic* test); *see also*, *Danville v. Regional Lab Corp.*, 292 F3d 1246, 1251 (10th Cir. 2002) (holding same); Michael J. Zimmer, Slicing & Dicing of Individual Disparate Treatment Law, 61 La. L. Rev. 577, 583 (2001) ("Evidence that, if believed, shows that the age of a worker was on the mind of a decisionmaker does not require a fact finder to draw the inference that [the] worker's discharge was because of his age, but it surely supports... drawing that inference. ").

In *Laxton v. Gap, Inc.*, the Fifth Circuit stated that even despite the *Reeves* decision, it would "continue to apply the *CSC Logic* test when a workplace remark is presented as *direct evidence* of

23

discrimination apart from the *McDonnell Douglas* framework." *Laxton*, 333 F.3d at 583 n.4 (emphasis added).   Yet, the court in *Laxton* refused to apply the *CSC Logic* test when determining whether workplace remarks should be considered as additional circumstantial evidence of discrimination under the *McDonnell-Douglass* framework.   *Id.* at 583 & n.4.   Noting that it had opted for a more flexible test in its decision in *Russell*, the Fifth Circuit in *Laxton* chose to apply a different standard to cases where discriminatory remarks are offered as circumstantial evidence of employment discrimination.   *See id.* (citing *Russell*, 235 F.3d at 226).

Accordingly, a plaintiff wishing to use workplace remarks as *circumstantial* evidence of employment discrimination – not direct evidence – need only prove that the remarks demonstrate (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.   *Laxton*, 333 F.3d at 583; *Sandstad*, 309 F.3d at 899; *Russell*, 235 F.3d at 225. Generally, ageist comments by coworkers or other employees without any decisionmaking authority over a plaintiff are usually inadmissible evidence of discriminatory intent on the part of the employer.   However, "the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker acted as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice." *Laxton*, 333 F.3d at 584 (citing *Russell*, 235 F.3d at 227).

Viewing the evidence in the light most favorable to Acker, the ageist remarks made by Ron deBoer and Doug Vogel mentioned in O'Neill's declaration are appropriate circumstantial evidence of age discrimination.   The remarks indicate age-related prejudice on the part of persons like Ron deBoer, the company president, and Vogel, who was twice removed in authority over Acker and who possibly had considerable influence over Ron deBoer, his father-in-law.   Not only did these

individuals have considerable authority over Acker within the company, but Ron deBoer himself was the person who actually terminated Acker.  Whether these comments were actually made as alleged depends on several credibility determinations, which the Court absolutely cannot resolve at the summary judgment stage.  For that reason, the Court finds that Acker has met his burden of raising a genuine issue of material fact whether his age was a motivating factor for his termination. Additionally, because deBoer has not presented any evidence that it would have made the same decision to terminate Acker, even if his age had been a motivating factor for his termination, Defendant's motion for summary judgment must be denied.

### C.      Plaintiff's TCHRA Claim

Under the TCHRA, it is an unlawful employment practice for age to be a "motivating factor" for an employee's discharge.  *See* Tex. Lab. Code §§21.125(a), 21.051 (West 2005); *see also*, *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 481 (Tex. 2001). After surveying Texas cases interpreting the TCHRA, the Fifth Circuit has recently concluded that there is "no meaningful distinction" between the analysis that a court should employ under the TCHRA and the analysis it should employ to an ADEA claim after *Rachid*.  *See Machinchick*, 398 F.3d at 356.  Therefore, if a genuine issue of material fact precludes summary judgment on an ADEA claim, then summary judgment will also be precluded under the TCHRA for the same reason.  *See id*. at 356-57.

As explained above, Acker has shown that a genuine issue of material fact exists on whether his age was a "motivating factor" in deBoer's decision to terminate him.  Additionally, Defendant has failed to produce evidence to show that it would have made the same decision regardless of Acker's age.  Consequently,  deBoer is not entitled to summary judgment on Acker's claims under either the ADEA or the TCHRA.  *See id*.

### III.  CONCLUSION

For the reasons stated above, the Court **DENIES** deBoer's Motion for Summary Judgment.

**IT IS SO ORDERED**

**ENTERED: April 25, 2006**

_____
**HON. JERRY BUCHMEYER**
**SENIOR UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**